MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
E-mail: rplatt@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
E-mail: dbrown@manatt.com
CONNIE LAM (Bar No. CA 301535)
E-mail: clam@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER A. RHEINHEIMER (Bar No. 253890)
Email: crheinheimer@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for *Defendant*
MATCH.COM, L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ZEKE GRAF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

vs.

MATCH.COM, L.L.C.,

Defendant.

No. 2:15-cv-03911-PA-MRW

Hon. Percy Anderson

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;**

**MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed concurrently with
1. Declaration of Brett Richards;
2. [Proposed] Order]

Hearing Date: August 3, 2015
Hearing Time: 1:30 p.m.
Courtroom: 15

Action removed: May 22, 2015

PLEASE TAKE NOTICE THAT on August 3, 2015, at 1:30 p.m. in Courtroom 15, defendant Match.com, L.L.C. will and hereby does move this Court for an order dismissing or staying this putative class action lawsuit and compelling plaintiff Zeke Graf to pursue his claims against Defendant, if at all, in arbitration and on an individual basis only.

This Motion is brought under the Federal Arbitration Act, 9 U.S.C. § 3, on the grounds that Plaintiff's claims against Defendant are subject to a mandatory arbitration provision. The Terms of Use that Plaintiff agreed to when he subscribed to Defendant's services state that the exclusive means for the parties to resolve any dispute between them arising out of or relating to their agreement, Defendant's services, or Defendant's website shall be binding arbitration. The Terms of Use also contain a waiver of any right to pursue claims against Defendant in court (other than small-claims court) or to participate in any kind of class or representative action.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Brett Richards, all papers on file with the Court, and all evidence and argument presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 that began on May 22, 2015 and concluded on May 26, 2015.

Dated: May 29, 2015

MANATT, PHELPS & PHILLIPS, LLP

By:/s/ Robert H. Platt
Robert H. Platt
Attorneys for *Defendant*
MATCH.COM, L.L.C.

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 2 |
| I. | THE PARTIES AGREED TO ARBITRATE ANY DISPUTES BETWEEN THEM | 2 |
| II. | THE ARBITRATION CLAUSE IS ENFORCEABLE | 4 |
| III. | CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) .......... 7

*Buckeye Check Cashing v. Cardenga*,
546 U.S. 440 (2006) .......... 1, 8

*Friedman v. Guthy-Renker LLC*,
2015 U.S. Dist. LEXIS 24307 (C.D. Cal. Feb. 27, 2015) .......... 7, 8

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) .......... 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 5, 6

*Nicosia v. Amazon.com, Inc.*,
2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) .......... 7

*Southland Corp. v. Keating*,
546 U.S. 1 (1984) .......... 7

*Southwest Airlines Co. v. BoardFirst, LLC*,
2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .......... 7

*Van Tassell v. United Marketing Group, LLC*,
795 F. Supp. 2d 770 (N.D. Ill. 2011) .......... 6

## STATUTES

9 U.S.C. § 1 *et seq*. .......... 1

9 U.S.C. § 3 .......... 4

California Civil Code § 1694 .......... 1, 5, 7

## PRELIMINARY STATEMENT

Defendant Match.com, L.L.C. ("Defendant" or "Match.com") operates a dating website at www.match.com. (Declaration of Brett Richards ("Richards Decl."), ¶ 2.) Plaintiff alleges that when he subscribed to Match.com's services "in or about 2012," he was not presented with certain disclosures regarding the right to cancel his subscription that allegedly were required under California Civil Code section 1694 (which pertains to "dating service contracts"). (Compl., ¶¶ 20, 22.) Plaintiff asserts claims against Defendant on behalf of a putative class of California residents who also subscribed to Match.com.

Plaintiff's lawsuit should be dismissed or stayed because Plaintiff may pursue his claims against Defendant only in arbitration, and only in an individual capacity rather than as a putative class representative. As a condition of Plaintiff's registration for and subscription to Match.com, he was required on two separate occasions to expressly agree to the Match.com Terms of Use. Those Terms of Use provide, *inter alia*, that the exclusive means of resolving any dispute between the parties arising out of or relating to their agreement, Match.com's services, or the Match.com website shall be binding arbitration. (Richards Decl., Ex. 3 at ¶ 23.) The Terms of Use also contain a waiver of any right to pursue claims against Defendant in court (other than small-claims court) or to participate in any kind of class or representative action. (*Id.*)

This agreement to arbitrate is fully enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. Moreover, it is enforceable despite Plaintiff's claim that the alleged violation of Civil Code section 1694 renders the parties' contract void and unenforceable. The Supreme Court has unequivocally held that the arbitrator, rather than a court, decides in the first instance whether the contract that contains the parties' arbitration agreement is valid. *Buckeye Check Cashing v. Cardenga*, 546 U.S. 440, 445-46 (2006).

Therefore, Defendant respectfully requests that the Court dismiss or, in the alternative, stay this action, and order that Plaintiff pursue his claims against Defendant, if at all, in arbitration solely on an individual basis.

## ARGUMENT

### I.
### THE PARTIES AGREED TO ARBITRATE ANY DISPUTES BETWEEN THEM.

Defendant operates a dating website, Match.com, that requires all users to follow a registration process before they can access even the basic, free features of the site. (Richards Decl., ¶ 2.) The website also requires users who are interested in paid, premium features to follow an additional process in which they purchase a subscription for a fee. (*Id.*, ¶ 5.)

Plaintiff alleges that he subscribed to Match.com "in or about 2012." (Compl. ¶ 20.) As discussed below, since at least as early as 2011, it has been a condition of both registering for and subscribing to Match.com that a consumer agree to the Match.com Terms of Use at each of those junctures. The Terms of Use, in turn, have at all times since 2011 included an arbitration agreement and a class action waiver.

Consumers can access Match.com via a personal computer or a mobile device such as a smartphone. Regardless of the means of access, all consumers must register on Match.com in order to use the site. Since early 2011, the registration page has always contained a button, typically labelled "Continue," that the user clicks to affirm consent. (Richards Decl., ¶ 3 and Ex. 1.) Immediately adjacent to that button, the registration page contains a statement that, by clicking or choosing the "Continue" (or however named) button, the consumer is certifying that he or she agrees to the Match.com Terms of Use. (*Id.*)[1] The "Terms of Use"

[1] During 2011-2013 (and thus during the period when Plaintiff claims to have joined Match.com), the registration page typically stated: "By Choosing 'Continue,'

link is always hyperlinked to the full text of the Terms of Use so that the consumer can readily access and review the Terms of Use before clicking the button. And the Terms of Use link and statement of consent to the Terms of Use are always adjacent to the button affirming the user's consent. (*Id.*, ¶ 4 and Ex. 1.)

If a registered user wishes to access premium features, he or she must go through an additional process to purchase a subscription for a fee. (Richards Decl., ¶ 5.) In order to complete the subscription process, the user must enter his or her billing information on a billing information page and click a "Subscribe Now" button. (*Id.*, ¶ 5 and Ex. 2.) From approximately May 2011 through early 2013, this billing information page contained an instruction adjacent to the "Subscribe Now" button which stated that, by clicking a box adjacent to the instruction, the user affirmed his or her agreement to the Match.com Terms of Use. (*Id.*, ¶ 6 and Ex. 2.) The "Subscribe Now" button would not work unless the user first clicked the box indicating consent to the Terms of Use. (*Id.*, ¶ 6.) As in the registration process, the phrase "Terms of Use" in the instruction on this page was hyperlinked to the full text of the Terms of Use. (*Id.*, ¶ 6 and Ex. 2.) In all cases, therefore, the user would have explicitly confirmed his or her agreement to the Match.com Terms of Use on two occasions if he or she subscribed to the paid features of the website.

Since September 2011, the Match.com Terms of Use have included the following arbitration agreement and class action waiver:

> **<u>Arbitration Agreement.</u>** The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), the Service, or the Website shall be **BINDING ARBITRATION** administered by the American

---

I certify I am at least 18 years old and have read and agree to the Match.com privacy policy and terms of use." (Richards Decl., ¶ 3, Ex. 1.)

> Arbitration Association. The one exception to the exclusivity of arbitration is that you have the right to bring an individual claim against the Company in a small-claims court of competent jurisdiction. But whether you choose arbitration or small-claims court, you may not under any circumstances commence or maintain against Match.com any class action, class arbitration, or other representative action or proceeding.

(Richards Decl., ¶ 7 and Exs. 3 and 4 at ¶ 23 (emphasis in original).) The arbitration agreement also provides that, while the Terms of Use are otherwise governed by Texas law, the arbitration agreement itself is governed by the Federal Arbitration Act. (*Id.*, ¶ 8 and Exs. 3 and 4 at ¶ 23.)

As noted above, Plaintiff allegedly subscribed to the Match.com website "in or about 2012." (Compl. ¶ 20.) Accordingly, Plaintiff was required to have consented to Match.com's Terms of Use, including the arbitration agreement, as a condition to both registering and subscribing.[2]

## II.
## THE ARBITRATION CLAUSE IS ENFORCEABLE.

The Federal Arbitration Act permits a court to stay a lawsuit in deference to an arbitration agreement "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. Here, Plaintiff expressly agreed to arbitrate "any dispute or claim arising out of or relating to this Agreement, the Service, or the Website . . . ." (Richards Decl., ¶ 8 and Exs. 3 and 4 at ¶ 23.)

---

[2] Plaintiff concedes that he did, in fact, enter into a contract with Defendant. (*See* Compl. ¶¶ 27-28 (referring to Plaintiff's contract with Defendant).)

There is no question that Plaintiff's claims are subject to the parties' arbitration agreement, because his claims clearly arise out of or relate to the "Agreement, the Service, or the Website." Plaintiff claims that when he subscribed to Match.com, there was no cancellation-related disclosure in his agreement with Match.com of the kind that is allegedly required under Civil Code section 1694.[3] Solely on that basis, Plaintiff claims that the Match.com agreement violated section 1694 and, derivatively, violated California's Unfair Competition Law and False Advertising Law.

There is also no question that Plaintiff consented to the Terms of Use. The methods that Defendant has used continuously since before 2011 for obtaining consent to its Terms of Use during both the registration process and the subscription process have been versions of the "browsewrap that resembles clickwrap" method. A "browsewrap that resembles clickwrap" method of obtaining consent is valid under both California law (to the extent that California law applies here) and Texas law (which governs the Terms of Use except for the arbitration agreement itself).

In *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), the Ninth Circuit, applying California law, addressed the question of when a consumer is bound by a website's terms of use. *Id.* at 1775. The Ninth Circuit first distinguished two common means of presenting terms of use:

> 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's

---

[3] It is somewhat anomalous that Plaintiff, who apparently is not even sure what year he subscribed to Match.com, claims to specifically recall that he was never presented with a Civil Code section 1694 disclosure. (S*ee* Compl. ¶¶ 20, 22; *but see* Richards Decl., Ex. 2 (billing information page containing such disclosure).)

> terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen.

*Id.* at 1776.

The Ninth Circuit in *Nguyen* explained that a pure browsewrap agreement typically raises a question of fact regarding whether a consumer has agreed to the terms of use: "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* (quoting *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). On the other hand, a pure "clickwrap" agreement is always sufficient to obtain consent, because this method requires the consumer to affirmatively assent to the terms after reviewing them. *See id.* at 1175-76.

The court in *Nguyen* then discussed the "browsewrap that resembles clickwrap" method of obtaining consent, where the consumer must click an "I agree" box or otherwise clearly manifest consent to the terms of use, while the terms of use themselves are accessible via hyperlink. 763 F.3d at 1176-77. The Ninth Circuit held that this method of obtaining consent is also valid, noting that "[c]ourts have been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement . . ." *Id.* at 1177. In support of its holding, the Ninth Circuit cited *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012), which held that a forum selection clause was enforceable where a notice below the "Sign Up" button indicated that signing up was confirmation that the user had read and agreed to the terms of use. *Id.* at 837.

Defendant's method of obtaining Plaintiff's consent (on two separate occasions) to its Terms of Use, which afforded ready access to the text of the Terms of Use and required affirmative action on the part of the consumer to manifest his or her agreement to accept the Terms of Use by clicking "Continue" (or a similarly-

designated button) during the registration process and "Subscribe Now" during the subscription process, plainly qualifies as a "browsewrap that resembles clickwrap" method of obtaining consent and is thus valid under California law.[4] Furthermore, these methods of obtaining consent are controlling and enforceable in the specific context of a motion to compel arbitration pursuant to an arbitration agreement in the terms of use. *See Friedman v. Guthy-Renker LLC*, 2015 U.S. Dist. LEXIS 24307, *11 (C.D. Cal. Feb. 27, 2015) (enforcing arbitration clause and class action waiver where website contained checkbox indicating agreement to terms of use, which could be accessed by clicking on hyperlinked "Terms and Conditions" text); *Nicosia v. Amazon.com, Inc.*, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) (dismissing action due to arbitration agreement in terms of use, where plaintiff consented to terms of use when registering with website and again when making purchase). In addition, these methods of obtaining consent are enforceable under Texas law as well. *See Southwest Airlines Co. v. BoardFirst, LLC*, 2007 WL 4823761, *4-6 (N.D. Tex. Sept. 12, 2007) (under Texas law, browsewrap terms of use held enforceable where user manifests assent, or otherwise has actual or constructive knowledge of terms of use).

Plaintiff is therefore bound by the arbitration agreement and class action waiver in the Terms of Use.[5] Moreover, Plaintiff is bound despite his assertion that his entire contract with Defendant is "void and unenforceable" due to the alleged violation of Civil Code section 1694. (*See* Compl., ¶ 28.) It is up to the arbitrator,

---

[4] Indeed, in this case it is incontrovertible that Plaintiff had notice of Match.com's Terms of Use because his entire lawsuit is based on the allegation that certain legally required language was absent from those Terms of Use.

[5] A waiver of the right to assert a class action is fully enforceable, regardless of any conflicting state laws. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750-51 (2011); *Southland Corp. v. Keating*, 546 U.S. 1, 12 (1984).

rather than a court, to decide whether a contract that contains an arbitration agreement is an enforceable contract:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, ***the issue of the contract's validity is considered by the arbitrator in the first instance***. Third, this arbitration law applies in state as well as federal courts.

*Buckeye Check Cashing v. Cardenga*, 546 U.S. 440, 445-46 (2006) (emphasis added); *see also id.* at 448-49 ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, ***a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator***.") (emphasis added).

## III.
## CONCLUSION

Accordingly, Defendant respectfully requests that the Court dismiss or, in the alternative, stay this action (*see Friedman*, 2015 U.S. Dist. LEXIS 24307 at *16), and order that Plaintiff pursue his claims, if at all, in arbitration and on an individual basis only.

Dated: May 29, 2015 MANATT, PHELPS & PHILLIPS, LLP

By:/s/ Robert H. Platt
Robert H. Platt
Attorneys for *Defendant*
MATCH.COM, L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ZEKE GRAF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

vs.

MATCH.COM, L.L.C.,

Defendant.

No. 2:15-cv-03911-PA-MRW

Hon. Percy Anderson

**[PROPOSED] ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Hearing Date: August 3, 2015
Hearing Time: 1:30 p.m.
Courtroom: 15

Action removed: May 22, 2015

The motion of defendant Match.com, L.L.C. ("Defendant") to compel Zeke Graf ("Plaintiff") to individually arbitrate his claims came on for hearing before this Court on August 3, 2015 at 1:30 p.m., the Honorable Percy Anderson presiding. All parties appeared as indicated in the record.

After considering the moving, opposing, and reply papers, the evidence submitted by the parties in support of and in opposition to the motion, and the arguments of counsel,

IT IS HEREBY ORDERED that Defendant's motion to compel arbitration is granted, and the Complaint is dismissed in its entirety without leave to amend on the following grounds:

1. Pursuant to 9 U.S.C. section 3, Plaintiff's claims are subject to a mandatory arbitration provision in Defendant's Terms of Use that Plaintiff agreed to, both when he registered on Defendant's website and again when he purchased a subscription to the website's premium features. The Terms of Use also contain a waiver of any right to pursue claims against Defendant in court (other than small-claims court) or to participate in any kind of class or representative action. Plaintiff is bound by the Terms of Use that he agreed to when registering for and subscribing to Defendant's services. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014); *Friedman v. Guthy-Renker LLC*, 2015 U.S. Dist. LEXIS 24307, *11 (C.D. Cal. Feb. 27, 2015); *Southwest Airlines Co. v. BoardFirst, LLC*, 2007 WL 4823761, *4-6 (N.D. Tex. Sept. 12, 2007).

2. Plaintiff is bound by the arbitration provision and class action waiver in the Terms of Use despite his assertion that his entire contract with Defendant is "void and unenforceable" due to the alleged violation of Civil Code section 1694. It is up to the arbitrator, rather than a court, to decide whether a contract that contains an arbitration agreement is an enforceable contract. *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-46 (2006).

Furthermore, pursuant to *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990), the Court dismisses rather than stays this action because each and every cause of action in the Complaint is subject to the arbitration provision.

IT IS SO ORDERED.

DATED:___________________

___________________________
Honorable Percy Anderson
U.S. District Judge

Submitted by:

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT
DONALD R. BROWN
11355 W. Olympic Blvd.
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

By: /s/ Robert H. Platt
Attorneys for *Defendant*
MATCH.COM, L.L.C.