MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
E-mail: rplatt@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
E-mail: dbrown@manatt.com
CONNIE LAM (Bar No. CA 301535)
E-mail: clam@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER A. RHEINHEIMER (Bar No. 253890)
Email: crheinheimer@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for *Defendant*
MATCH.COM, L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEKE GRAF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>MATCH.COM, L.L.C.,<br><br>Defendant. | No. 2:15-cv-03911-PA-MRW<br><br>Hon. Percy Anderson<br><br>**MATCH.COM, L.L.C.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: July 13, 2015<br>Hearing Time: 1:30 p.m.<br>Courtroom: 15<br><br>Action removed: May 22, 2015 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................... 1
II. ARGUMENT ...................................................................................................... 2
    A. The Arbitration Provision Is Enforceable Regardless of Plaintiff's Claim That the Overall Contract Is Void ............................ 2
    B. Plaintiff Assented to the Terms of Use Themselves ............................ 6
    C. Plaintiff Assented to the Arbitration Provision ................................... 7
    D. The Arbitration Provision Is Not Unconscionable .............................. 8
        1. The Arbitration Clause Is Not Procedurally Unconscionable ............................................................................. 9
        2. Nor Is the Arbitration Clause Substantively Unconscionable ........................................................................... 10
III. CONCLUSION ................................................................................................. 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

314789388.1

i

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*,
 2014 WL 116442 (N.D. Cal. Jan. 13, 2014) .......................................................... 7

*Brown v. DirecTV, LLC*,
 2013 WL 3273811 (C.D. Cal. June 26, 2013) ..................................................... 11

*Buckeye Check Cashing v. Cardegna*,
 546 U.S. 440 (2006) ......................................................................................... 3, 4

*Colfax Envelope Corp. v. Local No. 458-3M, Chicago-Graphic
 Comm's Int'l Union*,
 20 F.3d 750 (7th Cir. 1994) .................................................................................. 3

*D.R. AutoNation USA Corp. v. Leroy*,
 105 S.W.3d 190 (Tex. App. 2003) ....................................................................... 7

*Duffens v. Valenti*,
 161 Cal. App. 4th 434 (2008) ........................................................................... 1, 4

*Estes v. Republic Nat. Bank of Dallas*,
 462 S.W.2d 273 (Tex. 1970) ................................................................................ 7

*Fleetwood Enter., Inc. v. Gaskamp*,
 280 F.3d 1069 (5th Cir. 2002) .............................................................................. 9

*Friedman v. Guthy-Renker LLC*,
 2015 U.S. Dist. LEXIS 24307 (C.D. Cal. Feb. 27, 2015) ............................... 6, 12

*Fuqua v. Fuqua*,
 750 S.W.2d 238 (Tex. App. 1988) ....................................................................... 7

*Grabowski v. Robinson*,
 817 F. Supp. 2d 1159 (S.D. Cal. 2011) ................................................................ 9

*Granite Rock Co. v. Int'l B'hood of Teamsters*,
 561 U.S. 287 (2010) ............................................................................................. 3

*Han v. Samsung Telecomm'cns Am.*,
 LLC, 2013 WL 7158044 (C.D. Cal. Dec. 16, 2013) ........................................ 8, 9

*Henry v. Fin. Cas. & Sur. Inc.*,
 2014 WL 2767394 (Tex. App. June 17, 2014) ................................................... 11

*In re AdvancePCS Health, L.P.*,
 172 S.W.3d 603 (Tex. 2005) .............................................................................. 10

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
 Los Angeles

314789388.1

ii

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*In re Green Tree Servicing, LLC*,
　275 S.W.3d 592 (Tex. App. 2008) ........................................................................... 10

*In re Lyon Fin. Servs.*,
　257 S.W.3d 228 (Tex. 2008) ..................................................................................... 9

*In re Palm Harbor Homes, Inc.*,
　195 S.W.3d 672 (Tex. 2006) ..................................................................................... 9

*Kilgore v. KeyBank, N.A.*,
　718 F.3d 1052 (9th Cir. 2013) ................................................................................ 10

*King v. Hausfeld*,
　2013 WL1435288 (N.D. Cal. Apr. 9, 2013) ........................................................... 11

*Lane v. Francis Capital Mgmt. LLC*,
　224 Cal. App. 4th 676 (2014) ................................................................................. 10

*Lawrence v. Comprehensive Bus. Servs. Co.*,
　833 F.2d 1159 (5th Cir. 1987) .................................................................................. 3

*Lifescan, Inc. v. Premier Diabetic Servs.*,
　363 F.3d 1010 (9th Cir. 2004) .................................................................................. 3

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
　89 Cal. App. 4th 1042 (2001) ................................................................................... 7

*Murphy v. DirecTV, Inc.*,
　724 F.3d 1218 (9th Cir. 2013) .................................................................................. 4

*My Café-CCC, Ltd. v. Lunchstop, Inc.*,
　107 S.W.3d 860 (Tex. App. 2003) .......................................................................... 10

*Newton v. American Debt Servs., Inc.*,
　854 F. Supp. 2d 712 (N.D. Cal. Feb. 22, 2012) ...................................................... 11

*Nguyen v. Barnes & Noble Inc.*,
　763 F.3d 1171 (9th Cir. 2014) .............................................................................. 6, 8

*Nicosia v. Amazon.com, Inc.*,
　2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) .............................................................. 6

*Pacheco v. PCM Constr. Servs., LLC*,
　2014 WL 145147 (N.D. Tex. Jan. 15, 2014) ............................................................ 9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
　388 U.S. 395 (1967) .............................................................................................. 3, 4

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

314789388.1

iii

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION

*Ramirez v. Freescore, LLC*,
 2011 WL 3812608 (C.D. Cal. Aug. 30, 2011) ........................................................ 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
 498 F.3d 976 (9th Cir. 2007) ............................................................................... 10

*Southwest Airlines Co. v. BoardFirst, LLC*,
 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .................................................. 6, 8

*Stagner v. Luxottica Retail N. Am., Inc.*,
 2011 WL 3667502 (N.D. Cal. Aug. 22, 2011) ....................................................... 8

*Strotz v. Dean Witter Reynolds, Inc.*,
 223 Cal. App. 3d 208 (1990) ............................................................................... 11

*Ticknor v. Choice Hotels Int'l*,
 265 F.3d 931 (9th Cir. 2001) .............................................................................. 3, 8

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
 25 Cal. App. 3d 987 (1972) ................................................................................... 7

### STATUTES

9 U.S.C. § 1 *et seq.* ...................................................................................................... 2

9 U.S.C. § 2 ............................................................................................................ 2, 3, 4

California Civil Code § 1694 ............................................................................... 2, 4, 5

### OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 187(2) .................................................. 8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

314789388.1

iv

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION

# I. **INTRODUCTION**

Defendant's Motion to Compel Arbitration establishes as a matter of law that Plaintiff assented to Match.com's Terms of Use when he subscribed to Match.com, and that the arbitration provision in those Terms is enforceable despite Plaintiff's claim that the overall contract is void. Plaintiff's Opposition fails to reckon with any of the dispositive arguments in Defendant's Motion.

The arbitration provision in question is governed by the Federal Arbitration Act ("FAA"). Plaintiff's argument that the gravamen of his Complaint—that the parties' contract is void under California's Dating Services Contract statute—voids the contract's arbitration provision *ab initio*, therefore fails as a matter of law. The U.S. Supreme Court has definitively held that where, as here, an arbitration provision is governed by the FAA, the validity of that provision is unaffected by any claim that the parties' overarching contract is void. The Court's only role in these circumstances is to determine whether the arbitration provision itself is enforceable, as the provision at issue here clearly is. Plaintiff's reliance on *Duffens v. Valenti*, 161 Cal. App. 4th 434 (2008)—which declined to enforce an arbitration provision in an allegedly void contract—is entirely misplaced, because the provision in that case was governed by California law rather than by the FAA.

Plaintiff's other arguments are equally unavailing. Plaintiff cannot plausibly deny that he agreed to the Terms of Use themselves, because the method by which he assented to those Terms—"browsewrap that resembles clickwrap"—is enforceable as a matter of law. Plaintiff's argument that the arbitration provision was buried in small print is contradicted by the provision itself, which was conspicuously displayed, and also by case law holding that an arbitration provision need not be specially highlighted to be enforceable. And, Plaintiff cannot establish that Defendant's arbitration provision, which consists of commonplace arbitration terms, is either procedurally or substantively unconscionable. The arbitration provision is fully enforceable, and accordingly the Court should compel arbitration.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

314789388.1

1

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION

## II. ARGUMENT

### A. The Arbitration Provision Is Enforceable Regardless of Plaintiff's Claim That the Overall Contract Is Void.

Plaintiff's primary argument is that the arbitration provision in the Terms of Use cannot be enforced because the underlying claim in this case is that the entire contract is void by reason of the alleged violation of the Dating Services Contract statute (California Civil Code § 1694). According to Plaintiff, under these circumstances, the Court rather than the arbitrator must determine whether the Terms of Use are enforceable, which in turn precludes enforcement of the Terms' arbitration provision.

The fatal flaw in Plaintiff's argument is that the arbitration provision at issue here is governed by the FAA, 9 U.S.C. § 1 *et seq.* The arbitration provision expressly states that it is governed by the FAA. (Declaration of Brett Richards [Dkt. No. 12-1], Exs. 3 and 4, ¶ 23(d).) Moreover, the FAA would govern in any event, because the parties are citizens of different states and, thus, their transaction involves interstate commerce.[1] *See* 9 U.S.C. § 2.

The Supreme Court has unequivocally held that where the FAA applies, a claim that the parties' contract is void is irrelevant to whether an arbitration provision within that contract is enforceable, explaining as follows:

> First, as a matter of substantive federal arbitration law, ***an arbitration provision is severable from the remainder of the contract***. Second, unless the challenge is to the arbitration clause itself, ***the issue of a contract's validity is considered by the arbitrator in the first instance***. Third, this arbitration law applies in ***state as well as federal courts***.

---

[1] Plaintiff resides in California, and Defendant is a Delaware company whose headquarters and principal place of business are in Texas. (Compl. ¶¶ 12-13.)

*Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-46 (2006) (emphasis added). *See also Ticknor v. Choice Hotels Int'l*, 265 F.3d 931, 937 (9th Cir. 2001) ("[T]he sole question is whether the arbitration clause at issue is valid and enforceable under § 2 of the Federal Arbitration Act. In making this determination, ***federal courts may not address the validity or enforceability of the contract as a whole***.") (emphasis added).

Under these circumstances, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs.*, 363 F.3d 1010, 1012 (9th Cir. 2004). *See also Granite Rock Co. v. Int'l B'hood of Teamsters*, 561 U.S. 287, 301 (2010) ("[C]ourts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself, or claims that the agreement to arbitrate was never concluded."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."); *Colfax Envelope Corp. v. Local No. 458-3M, Chicago-Graphic Comm's Int'l Union*, 20 F.3d 750, 754 (7th Cir. 1994) ("[C]ourts will not allow a party to unravel a contractual arbitration clause by arguing that the clause was part of a contract that is voidable.").

Furthermore, this rule—that the arbitration provision is severable and that challenges to the validity of a contract as a whole are reserved for the arbitrator—is applicable to "both state and federal courts and pre-empt[s] any state laws or policies to the contrary." *Ticknor*, 265 F.3d at 936 (internal quotations omitted); *see also Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1162 (5th Cir. 1987) ("Finally, the Lawrences suggest that enforcing the arbitration provision of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

314789388.1

3

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION

an illegal contract would contravene Texas law and is therefore improper. This argument forgets that the arbitrability of an issue under the Federal Arbitration Act is a matter of federal law.").[2]

The facts of *Buckeye Check Cashing* are instructive. In that case, a company entered into a series of transactions that allegedly violated state law. 546 U.S. at 443. The company moved to enforce the arbitration clause in its contracts, but the trial court denied the motion, explaining that enforcing the arbitration clause would give effect to allegedly illegal contracts. *Id.* The Supreme Court rejected this reasoning, holding that FAA section 2 must be read to enforce arbitration clauses, and that it was up to the arbitrator, rather than the court, to consider challenges to the validity of the contract, even if the contract may ultimately prove to be void. *Id.* at 446, 448. As the Court explained, the alternative—to "deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable"—would require the court to refuse to sever the arbitration provisions, thereby undercutting federal policy as expressed in the FAA. *Id.* at 448.[3]

Plaintiff's reliance on *Duffens v. Valenti*, 161 Cal. App. 4th 434 (2008), is therefore misplaced. In *Duffens*, as here, the plaintiffs claimed that their contract with the defendant was void under California Civil Code section 1694; but unlike here, the arbitration provision in the contract was governed by California law rather than by the FAA. *Id.* at 452. The holding in *Duffens* that the arbitration provision

---

[2] Plaintiff's observation that federal district courts sitting in diversity apply substantive state-law principles is generally correct *except* where, as here, state law is preempted by federal law. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1228 (9th Cir. 2013) ("[A] valid federal law preempts any state law purporting to regulate the same issue.").

[3] As the Supreme Court explained: "It is true, as respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions. *Buckeye Check Cashing*, 546 U.S. at 448-49.

was unenforceable under California law is inapposite here, because the arbitration provision at issue in this case is governed by federal law, the FAA.

Accordingly, the only issues that the Court must determine at this juncture are whether the arbitration provision itself is enforceable, and whether the provision encompasses the claims at issue in Plaintiff's Complaint. As to the first issue, none of the arguments that Plaintiff has asserted—that he never entered into any contract in the first place (i.e., that he never agreed to the Terms of Use), that the arbitration provision was buried in small print, and that the provision is unconscionable—has any merit whatsoever. As to the second issue, the arbitration provision clearly encompasses the claim at issue in this case. The provision requires arbitration of "any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), the Service, or the Website …" (Richards Decl., Exs. 3 and 4, ¶ 23(a).) Plaintiff's only claim is that Defendant violated Civil Code section 1694 by failing to include certain cancellation language in the contract. This claim obviously arises out of or relates to the Agreement, the Service, or the Website, and Plaintiff does not contend otherwise.

Defendant nonetheless notes that the underlying claim—i.e., that Defendant allegedly failed to disclose cancellation language as required under Civil Code section 1694 (assuming, *arguendo*, that Defendant is even subject to that statute)—is itself both disingenuous and demonstrably false. Defendant *did* display that language, directly above the box that Plaintiff clicked when he subscribed online to Match.com. (*See* Richards Decl., Ex. 2.) It is no small irony that Plaintiff, in an effort to escape arbitration, claims he never read or even was aware of the Terms of Use, yet also claims that Defendant violated section 1694 by displaying the cancellation language on the subscription web page that Plaintiff unquestionably saw, rather than in the Terms of Use that Plaintiff apparently found it unnecessary to consult.

### B. Plaintiff Assented to the Terms of Use Themselves.

The first of Plaintiff's back-up arguments is that he never even consented to the Terms of Use that contain the arbitration provision. This argument was anticipated and addressed in Defendant's Motion, based on dispositive case law that Plaintiff has simply ignored in his Opposition.

To briefly revisit, Plaintiff could not have completed the Match.com subscription process without providing assent to the Terms of Use. (*See* Richards Decl., Ex. 1 ["By Choosing 'Continue', I certify I am at least 18 years old and have read and agree to the Match.com privacy policy and terms of use."]; Ex. 2 ["By checking this box, I affirm: I agree to the Match.com terms of use."].)[4] This method of obtaining assent—which is sometimes referred to as "browsewrap that resembles clickwrap"—is valid and binding under both California and Texas law.[5] *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Southwest Airlines Co. v. BoardFirst, LLC*, 2007 WL 4823761, *4-6 (N.D. Tex. Sept. 12, 2007). Moreover, it is valid even though Plaintiff had to click a hyperlink to view the Terms of Use. *See Friedman v. Guthy-Renker LLC*, 2015 U.S. Dist. LEXIS 24307, *11 (C.D. Cal. Feb. 27, 2015) (enforcing arbitration and class waiver provision in terms of use that were accessible via hyperlink); *Nicosia v. Amazon.com, Inc.*, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) (same).

Plaintiff not only fails to address these cases but also provides no evidence, such as a declaration, to support his assertion that he was unaware of the Terms of Use. But even if he had, his argument would still fail. "The existence of mutual assent is determined by objective criteria, not by one party's subjective intent. The test is whether a reasonable person would, from the conduct of the parties, conclude

---

[4] The underlined text linked to the applicable privacy policy and terms of use.

[5] Texas law governs the parties' contract except insofar as the FAA governs the arbitration provision. (*See* Richards Decl., Exs. 3 and 4, ¶ 23(d).) The choice of law issue is discussed in more detail below on the subject of unconscionability.

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

314789388.1

1 that there was a mutual agreement." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1050 (2001); *see also Fuqua v. Fuqua*, 750 S.W.2d 238, 245 (Tex. App. 1988).[6]

Moreover, the Terms of Use are enforceable whether or not Plaintiff read them. A party "cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage*, 89 Cal. App. 4th at 1049; *see also Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972) ("[A]n offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.") (internal citations omitted); *Estes v. Republic Nat. Bank of Dallas*, 462 S.W.2d 273, 276 (Tex. 1970) ("[T]he general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an instrument before signing it is not a ground for avoiding it.").

### C. Plaintiff Assented to the Arbitration Provision.

Plaintiff contends that the arbitration provision itself is unenforceable because it was not sufficiently highlighted. To the contrary, there is no requirement under California or Texas law that an arbitration provision be set off in bold print, include large font, or contain any other special identifying characteristics. *See Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, 2014 WL 116442 (N.D. Cal. Jan. 13, 2014); *D.R. AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 199 (Tex. App. 2003). And even if there were such a requirement, it was satisfied here. The heading of the arbitration provision was set off in bold, blue font, and important clauses in the provision, such as "**BINDING ARBITRATION**," "**YOU GIVE UP YOUR RIGHT TO GO TO COURT**," "**YOU ALSO GIVE UP**

---

[6] There is a narrow exception to this rule "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." *Marin Storage*, 89 Cal. App. 4th at 1049-50. However, this exception does not apply where, as here, the writing was clearly presented as a contract. *See id.* at 1050 ("[T]he document 'clearly' indicated on its face that it was a contract and specifically referred to the terms on the reverse side.").

**YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION OR OTHER CLASS PROCEEDING**," and "**NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY**," were presented in bold, upper-case lettering. (Richards Decl., Exs. 3 and 4, ¶¶ 23(a), (b).)

Plaintiff (through his counsel) also contends that he simply didn't intend to agree to arbitration, but again, this contention is unsupported by any evidence, and it would fail even if it were. Plaintiff relies entirely on *Stagner v. Luxottica Retail N. Am., Inc.*, 2011 WL 3667502 (N.D. Cal. Aug. 22, 2011), where the defendant moved to compel arbitration based on an agreement that contained a place for the plaintiff's signature but was never signed, and where the plaintiff submitted evidence that he never intended to agree to arbitration. *Id.* at *4. Here, by contrast, Plaintiff ***did*** indicate his agreement (twice) to the Terms of Use, which contained the arbitration provision (*see* Richards Decl., Exs. 1 and 2), and he has submitted no evidence suggesting anything to the contrary. This method of assent is enforceable as a matter of law. *See Nguyen*, 763 F.3d at 1177; *Southwest Airlines Co.*, 2007 WL 4823761 at *4-6.

### D. The Arbitration Provision Is Not Unconscionable.

Plaintiff's final argument is that the arbitration provision is unconscionable. This argument, like the others, fails under both Texas and California law. (*See* Richards Decl., Ex. 3 ¶ 23(d), Ex. 4 ¶ 23(d) (specifying Texas law except insofar as the FAA governs the arbitration provision).)[7]

---

[7] As explained in *Ticknor*, where the defendant moved to compel arbitration under a contract with a choice of law clause, the forum state's conflict of laws rules determine whether unconscionability is determined by the forum state's laws or those of the state chosen in the contract. 265 F.3d at 937. In California, "courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Han v. Samsung Telecomm'cns Am.*, LLC, 2013 WL 7158044, *2 (C.D. Cal. Dec. 16, 2013). "Under that approach, the Court first decides whether the chosen state has a substantial relationship to the parties or the transaction or whether there is any other reasonable basis for the parties' choice-of-law." *Id.* at *5. That prong is satisfied here because Defendant resides is Texas. *See Ramirez v. Freescore, LLC*, 2011 WL 3812608 (C.D. Cal. Aug. 30, 2011). The court then

1. **The Arbitration Clause Is Not Procedurally Unconscionable.**

Plaintiff argues that the arbitration provision is procedurally unconscionable because it is part of a contract of adhesion. Texas law rejects this position. "Adhesion contracts are not automatically or per se unconscionable, and there is nothing per se unconscionable about arbitration agreements." *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 233 (Tex. 2008); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006) ("[P]rinciples of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position."). Further, "absent a duty to disclose, such as in a confidential or fiduciary relationship, an agreement is not unconscionable or fraudulent merely because one party was not informed as to the arbitration provisions." *Pacheco v. PCM Constr. Servs., LLC*, 2014 WL 145147, *5 (N.D. Tex. Jan. 15, 2014).[8] Thus, an arbitration provision is not procedurally unconscionable merely because it is part of a contract of adhesion and its existence was not otherwise highlighted.

Plaintiff's procedural unconscionability claim also fails under California law. *See Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1172 (S.D. Cal. 2011) ("In light of the Supreme Court's decision in *Concepcion*, however, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability."). This is especially so considering that Plaintiff had many other dating services options when he subscribed to Match.com, *see id.* at 1572, and the

---

inquires "whether the 'chosen state's law is contrary to a fundamental policy of California.'" *Han*, 2013 WL 7158044 at *5. "If there is no such conflict, the court shall enforce the parties' choice of law." *Id.*
Here, the unconscionability analysis yields the same result under either state's law, so Texas law applies. *See id.* at *7, n.9. Moreover, Texas law would apply in either event, because whether a contract is unconscionable does not implicate a fundamental California policy. *See id.* at 7.

[8] The "only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002).

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

314789388.1

arbitration provision heading here is set off in bold print, *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1059 (9th Cir. 2013).

2. **Nor Is the Arbitration Clause Substantively Unconscionable.**

The absence of procedural unconscionability is sufficient to end the inquiry. *See In re Green Tree Servicing, LLC*, 275 S.W.3d 592, 603 (Tex. App. 2008) ("The party asserting unconscionability bears the burden of proving both procedural and substantive unconscionability."); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007) (same under California law). Nonetheless, Plaintiff's argument fails for the additional reason that the arbitration provision is not substantively unconscionable either. Courts applying both Texas and California law regularly uphold and enforce arbitration agreements contained in contracts of adhesion. *See, e.g.*, *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) ("Adhesion contracts are not automatically unconscionable, and there is nothing per se unconscionable about arbitration agreements."); *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 689-90 (2014) ("[A]ssuming the agreement was one of adhesion, courts have consistently held that that fact alone is insufficient to invalidate an arbitration agreement.").

Plaintiff complains that the arbitration provision here is overly broad, and that it would "for all intents and purposes, bind Plaintiff to arbitration for Plaintiff's entire lifetime, for any type of wrong committed by Defendant, regardless of whether or not it was in any way related to Plaintiff's Account." (Opp. at 15:1-4.) That is demonstrably wrong. The arbitration provision only requires arbitration of disputes relating to the contract between the parties, the Match.com service, or the Match.com website. (*See* Richards Decl., Exs. 3 and 4, ¶ 23(a).) It does not require the arbitration of disputes unrelated to Plaintiff's subscription or use of the website or services. Courts in Texas and California regularly enforce arbitration provisions with similar language. *See, e.g.*, *My Café-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App. 2003) (enforcing arbitration provision that applied to

"[a]ny dispute arising under or in connection with" the agreement and "any claim affecting its validity, construction, effect, performance or termination"); *Brown v. DirecTV, LLC*, 2013 WL 3273811, *10 (C.D. Cal. June 26, 2013) (enforcing arbitration provision in contract of adhesion that applied to all disputes "relating to" the agreement).

Plaintiff also argues that the arbitration clause is unconscionable because the forum selection clause in the Terms of Use "requires consumers to litigate in federal or state courts located in Dallas County, Texas." (Opp. at 15:11-13.) Again, Texas and California law permit enforcement of such clauses. *See, e.g., Henry v. Fin. Cas. & Sur. Inc.*, 2014 WL 2767394, *2 (Tex. App. June 17, 2014); *King v. Hausfeld*, 2013 WL1435288, *15 (N.D. Cal. Apr. 9, 2013). Plaintiff's reliance on *Newton v. American Debt Servs., Inc.*, 854 F. Supp. 2d 712 (N.D. Cal. Feb. 22, 2012), and *Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208 (1990), to the contrary is misplaced. The courts in those cases found forum selection clauses to be unconscionable because, among other reasons, they required ***arbitration*** in an inconvenient forum for the plaintiff. *Newton*, 854 F. Supp. 2d at 726; *Strotz*, 223 Cal. App. 3d at 216 n.7. Here, by contrast, the forum selection clause in the Terms of Use does not apply to arbitrations or to court actions relating to the enforcement of the arbitration clause. (Richards Decl., Exs. 3 and 4, ¶ 23(c).)[9] Plaintiff is therefore free to initiate arbitration close to home.

---

[9] Indeed, the application of the forum selection clause depends on the arbitration clause having been held unenforceable: "In the event that this agreement is for any reason held to be unenforceable, any litigation against Match.com (except for small-claims court actions) may be commenced only in the federal or state courts located in Dallas County, Texas. You hereby irrevocably consent to the jurisdiction of those courts for such purposes." (Richards Decl., Ex. 3 ¶ 23(c); Ex. 4 ¶ 23(c).)

314789388.1

### III. CONCLUSION

Defendant respectfully requests that the Court dismiss or, in the alternative, stay this action (*see Friedman*, 2015 U.S. Dist. LEXIS 24307 at *16), and order that Plaintiff pursue his claims, if at all, in arbitration and on an individual basis only.

Dated: June 29, 2015             MANATT, PHELPS & PHILLIPS, LLP

By:/s/ Robert H. Platt
Robert H. Platt
Attorneys for *Defendant*
MATCH.COM, L.L.C.